

DV
USDC - SDWV - Beckley Division
Beckley, WV



5:19-cv-00620
CA 5:18cv01212

+++++++++++++++++++++++++++++

.        Kopp

.        v.

.        U.S.

+++++++++++++++++++++++++++++

REQUEST FOR ORDER TO SHOW CAUSE

WHY TEMPORARY RESTRAINING ORDER

SHOULD NOT BE ISSUED BY THIS COURT

Comes now the Plaintiff in the above-styled matter and declares the following:

Plaintiff is an inmate at FCI Beckley located in Beaver, West Virginia.  Defendant is specified staff of the same FCI.

Plaintiff's motive in bringing the instant litigation is not  monetary damages or other punishments.  Plaintiff's motive is confined to enforcing what he sincerely is persuaded is proper conduct in the matter of handling of his mail as detailed +++infra+++. However Plaintiff also does not waive the possibility of any future litigation at this time.

For reasons which by now should be familiar to the Court the actors in the below described conduct are identified in this action as John and Jane Does.  Their actual names and titles are available upon my proper contact with counsel and instruction of the Court.

### List of Conducts Requested To Be Restrained

A.  Defendant is currently holding a letter from Plaintiff to his counsel.  Defendant effectively refuses to enter
     this mail  into the free-standing USPS system, nor return the mail nor the Certified Mail receipt affixed
     to same to Plaintiff;

B.  Defendant has opened Plaintiff's +++outgoing+++ legal mail, and in his absence.  Said mail was from Plaintiff
     to his counsel;

C.  Defendant has a +++receding horizon+++ of unattainable requirements for incoming legal mail to be  handled
     as such.  Said horizon is facilitated by vague policy wording and absence of a practice of an
        +++attainable+++ satisfaction of incoming legal mail requirements;

D.  Subsequently all legal mail addressed to Plaintiff is opened in his absence, violating my access to the
     Court and its officers;

E.  Also, most or all inbound legal  mail is delayed unnecessarily, obstructing, again, my access to the Court;

F.  To facilitate (B), supra, Defendant has illegally forged and falsified or misused USPS documents and
        shredded, destroyed, stolen  or otherwise rendered valueless uncancelled USPS stamps bought and
        owned by me, without value received.

1

. DV

Expansion and Contextualization Of Description

Of Restrainable Conducts

§ Section I : Primary Concern

A.   Plaintiff's Affidavit dated 18 Mar 2019 explains how Defendant John Doe No. 3 seized Plaintiff's outbound legal mail, admitted same, and indicated he would return the Certified Mail receipt to Plaintiff the following day.  (Exhibits O, P and Q).

The day of that indication was 13 March 2019, two months ago and more as of the date of this filing.  Plaintiff has still not received the receipt nor the original mail back, as of this filing.
    As it stands, this conduct is a harm to me, denying me access to an officer of the Court.
    As a second potential harm, this seizing of my legal mail for a long period of time is consistent with my suggestion of a scheme whereby defendant staff can illicitly read my outgoing legal mail, and, do this reading in my absence.  See, "A Combination of Speculation and Facts To Explain How Defendant Can Read Plaintiff's Outgoing Legal Mail," Exhibit R.

This violates lawyer - client privilege and thus further denies my access to the Court and to an officer of the Court.

B.   In addition to the gravamen of this filing detailed in A immediately supra, Defendant also, on two occasions opened outbound legal mail in my absence.
    In the first case Defendant is still in possession of the physical piece of mail and has admitted same to me in the presence of witnesses.
    In the second and third cases the mail was returned to me, already opened.  In these latter two cases I still have the envelopes as returned to me, already opened (Exhibit A and B).

Two subtle if also tedious points bear careful scrutiny:

    1.   I would like to direct your careful attention to Exhibit A.

In the positions where you would normally expect to find it in the center of the envelope and upper left corner you can see a sticker addressed to counsel Barket and a return address sticker indicating myself as the sender at FCI Beckley.   Even though it has been overlaid by an RTS sticker, it is still visible, in part.
    In the top right area the 'ghost' impression of remnant adhesive can be seen where four stamps were stuck there by myself.  Ignoring later accretions, then, this Exhibit bears the image of how the outbound legal mail looked:



Having established what contribution I made to the face of the envelope, and eliminating these things from consideration for a moment, may I now direct the Court's attention to the text of the RTS label itself:

NIXIE     402     5E1     OTO7/28/17

RETURN TO SENDER
NOT DELIVERABLE AS ADDRESSED
UNABLE TO FORWARD

25813035050        UNABLE - 00231

[bar coding]

   I am not a postal worker.  Pending the testimony of an expert, it is my provisional contention, humbly proffered for the Court's consideration that this "Return To Sender" label was printed by equipment kept within the 25813 zip code and very likely  under the control of the Defendant staff.
   Viz: this letter never physically left zip code 25813.
   Past complaints to +++downtown+++ Beckley USPS staff by inmate's families have always been met with the answer "We don't do that."  Consequently, the null hypothesis suggests itself:
   a.  This piece of mail never left the FCI Beckley warehouse or other area under influence of Defendant staff;
   b.   The label was 'run off' there or nearby, in hopes that the inmate would not notice the possibility of a 25813 provenance for the label.

2.  All of this deceit is superadded to the fact that Counsel Barket has received dozens of letters at the address indicated before and after the date of this particular piece;

3.  I would now like to direct the Court's attention on to the upper right region of the envelope.

Please note the complete absence of a USPS cancellation mark of any description whatsoever. This absence includes absence of a machine cancellation mark of the Sender's USPS office zip code - 25813, in this case.

Also absent is the Addressee or destination USPS office zip code cancellation mark.  In the case of truly returned mail, this postage cancellation mark often is +++overlaid+++ upon the sender's cancellation mark pro quotidienne and pro forma, but as you can see it is utterly absent on this altered piece of mail.
It was altered to create  the impression of having been sent to the addressee zip code when in fact (I submit)  it was not.

The "$ 0.00" sticker present in the upper right corner is not necessarily USPS generated; it can be made by any Stamps, Inc.  - type private vendor equipment widely available to the public.

If Defendant argues that it was sent DV I will request subpoenae of that destination USPS office staff to explain to the court why no mark  is on the piece.

Review

.    No destination zip code on the RETURN TO SENDER "RTS" sticker;

No cancellation mark whatsoever in the upper right corner where postage is applied;

Nothing to indicate the letter ever left Beckley area;

+++Presence+++ of an allegedly fraudulent USPS sticker suggesting that the Addressee address is invalid when it was not;

Viewing all of this in combination with my speculative modus operandi proffered to the Court ("Combination of Speculation and Facts . . . ", Exhibit T) suggests forgery and fraud and it's fruit:

a.   legal mail refused to be delivered to its destination;

b.   legal mail opened in my absence.

4.    I apologize to the Court for the tediousness of this description but I have good news:  once an observer knows  where to look for fraudulence, the rest of the exhibits go more quickly.

Exhibit B

Exhibit B is like A, merely a repetition.

Please note carefully:

1.  Absence of an addressee USPS office zip code cancellation mark;

2.  25813 marks are +++manual only+++, equipment available outside the Beckley USPS office;

3.  "Unclaimed" sticker is inappropriate since piece is merely a No. 10 standard business envelope to be delivered by USPS mail carrier, not an oversize package requiring pickup at the local USPS office;

4

4.  If Defendant maintains that this letter was actually delivered I will be DV requesting a subpoena of the tracking history.

### Exhibit C

Exhibit C is the envelope of a letter to "Rosie" Carleton, a Catholic priest.   Again, a 25813 "RTS" sticker.   Again, please note the absence of a destination cancellation mark.

### Exhibit D

Exhibit D is interesting.

1.  Note that this piece does show a "Charleston" cancellation mark, and, again, a Return to Sender sticker which appears to be printed on 25813 zip code equipment..

The  RTS sticker also says "NO SUCH STREET."

### Exhibit E

Exhibit E is a copy of a page of the  2005 USPS Zip Code Directory which shows "Medford St." (highlighted) as a street listed in the addressee zip code, being 02474, Arlington, MA.

N.B.:  Fr. Carleton has received mail at this address for thirty years.

Section II.  Exhibits of Secondary Concern

These Exhibits Demonstrate Unnecessary Delay
And Opening in Plaintiff's Absence
Of All Incoming Legal Mail

The following few exhibits I freely admit do not demonstrate malice as clearly as the previous ones.  Even so they make an important point.

| Exhibit | Provenance Postmark Date | Actual Date Received by Plaintiff | Elapsed Days |
| --- | --- | --- | --- |
| F | 15 Dec 2016 | 27 Dec 2016 | 12 |
| G | 14 Jun 2017 | 21 Jun 2017 | 7 |
| H | 11 Jul 2017 | 25 Jul 2017 | 14 |
| I | 8 Aug 2018 | 14 Aug 2018 | 6 |
| J | 15 Aug 2018 | 21 Aug 2018 | 6 |

Table 1 shows the elapsed time between the origin post office sending date and the date actually received them.

From your own experience I bet you can agree a letter from New York takes about three days excluding weekends and holidays.

At first glance an average time to be put into my hands of nine days may not seem egregious.  Further, one can imagine Defendant responding that we screen mail for 1500 inmates; some days we are swamped, etc.

All of the exhibits in this section are letters from Federal courts, with deadlines set in them.  If all such mail were only screened for contraband, it takes literally no more than five or seconds to do that.  This is precisely how it was done, with the mail being opened in front of me, by all BOP staff I have experienced before Defendant FCI Beckley staff.

Viewed in this light, an average time to get the mail to me of nine days -- already opened and looked at in my absence -- elicits suspicion.

It tends to confirm my thesis:  Defendant staff is not merely screening the inbound mail for contraband, they are putting their feet up, in my absence, and reading every word of it.  Why else would they need that much time?  True screening, only, is instantaneous, and carried out every day by BOP staff on other yards much busier than Defendant staff.  Easy to prove this.

As I say, these exhibits don't show malice as well as the others, but put in aggregation with the other harms, they do show a purposeful and unnecessary delay of fed. courts mail to me.  This tampering is systematic and consistent.

This systematic and consistent theme is the burden of relevant caselaw.
I suspect this same standard or threshold of consistent and systematic has been set in place to obviate frivolous litigation over what may be the occasional delay which can be attributed to innocent events or burdens on staff.

That is not the case here.  Once you see the trend, it's obvious even with these exhibits of secondary concern.

A Few Smaller Points

Exhibits K through P, inclusive, are some  history for context  of the instant action.

Exhibits K and L are examples of "control" postmarks for comparison with  fake-returned mail, which have none;

Exhibit L is an example of the outer envelope of correspondence from this Court, as it appears to the mail room staff, which Defendant does not deem proper Legal Mail;

Did  you get this letter yet?  (Exhibit M).  If so, I have no response from you, opened or unopened;

Exhibit S is the Certified Mail barcode number of the gravamen letter, supra, now held by Defendant SIS the last 90 days and more.

Of course it is not probative but Exhibit U is a partial list of the people I have written recently from whom I have received no response nor indication they received the mail.

The list in Exhibit U, and also Exhibits X and Y are also some indication of my attempts to resolve this matter at a lower level;

Privileges extended and mentioned in Exhibit W in no way indicate justification fro instant misconduct;

Returning to Gravamen

Returning briefly to the gravamen of the instant filing, let's single out the relevant information:

a.    A previous legal mail letter to counsel was held, opened and returned with  forged stickers on it;

b.    A member of mailroom staff opened, in my presence, read, commented on and asked me questions based on the intellectual content of legal  mail from this Court to me;

c.    Shortly after the last letter I wrote you, a Jane Doe asked a question only sensible in the context of having learned information in that letter.   This was information she received and acted upon before  you had a chance to read it.  In this manner  my access to the Court is not only bypassed, but substituted for by non-Court personnel.

d.    All letters from USCA were opened in my absence,  every  single one.

Except for (b) supra none of the above apodictically proves anyone actually read  my mail.  It merely proves they went to an awful lot of completely unnecessary trouble and deception to create the opportunity.  Since the admitted head of the mail room staff did in fact open and read and commented on  mail to me from this Court in front of me, this does however signify for pandemic misbehavior.

This all corroborates inmate hearsay, viz: an inmate here tells me he directly observed Unit staff opening and reading outbound legal  mail, each of them with Certified Mail stickers on them.

7

## Summary

To summarize the above assertions:

i.     One piece of mail has been held two and a half months without being sent into the USPS system, despite it's being accepted in proxy of USPS;

ii.    All legal mail is opened in my absence, including correspondence from this Court.

iii.   Some of the correspondence with this Court, after being opened, was again opened, read, and the intellectual contents of same discussed with me by Defendant mailroom staff, an outcome I doubt is desired by this court;

iv.    USPS forged documents were used to achieve some of the above sneaks and peaks;

v.     An unclear standard of 'legal mail' is used as an excuse, such that even this Court's correspondence does not qualify as same;

vi.    My attempts to communicate with officers of this Court, meaning my counsel, have been and are being obstructed;

vii.   Any mail I really want to get there seems to need a Certified Mail gizmo, which is an illegal tax;

viii.  Dozens of other parties I have written to, some of them oversight bodies, have never responded. I have no way of knowing if they got the mail or not.

## Conclusion

The tampering described, unstopped, could well find it's way outside the walls of the BOP, could it not?

There is other behavior and paperwork that can be brought in later. I understand however that the Court may wish to define a passel of information as perfected before it requires opposing counsel to respond.

Since I do not have infinite money for copying and postage I therefore deem the current paperwork contained herein, this instant filing, including its copyings of previous filings, as complete and sufficient for the purposes of an order from the court for opposing counsel to show cause why the TRO should not issue.

If Defendant does not respond, the allegations herein should stand as uncontested facts and the TRO thus having a foundation, per the Court's discretion as it sees the facts. I humbly submit the enclosed.

## Consequences of Inaction

Suppose a TRO doesn't issue. The problem will persist and be yet a continuing and unresolved drain on the Court's economy. Plaintiff is currently pursuing a +++Johnson+++ sequelae appeal with the 2CA. The instant action is currently unresolved, requiring more communication and respond to deadlines in that venue.

Opposing counsel may wish to oppose the TRO. Not entirely to anticipate its arguments, nevertheless one can imagine such arguments;

i.     plaintiff caused the problem by failing to receive opened mail;

ii.    plaintiff agreed to this or that in agreements signed upon entering the BOP;

iii.   SIS Mail Hold" or other oversight arrangement is looking for signs of possible future crimes;

iv.    thin Blue Line, etc.

None of these justify the instant gravamen actions at all, nor any other.  We have yet to arrive at +++Minority Report+++ or +++Gulag Archipelago+++ in the U.S.  And Stalin's +++Gulag+++ did in fact forward complaining  mail to Western recipients.  But  for us,  not from Beckley FCI.

All of this leaves out USPS - OIG and DOJ Central, both of which I have been trying to communicate with, and counsel, these months.

PRAYER

It is plaintiff's bielef that opposing counsel now has before them sufficient information and facts to respond to an Order to Show Cause.

i.    Plaintiff  humbly requests Court to issue same, and;

ii.    Any other relief the Court deems appropriate.

Most Respectfully Submitted,

James C. Kopp, Plaintiff, acting pro se                    7 June 2019

9

## TEMPORARY   RESTRAINING   ORDER

### ORDERED

1. USA - SDWV Beckley Division or any agent of this Court will work with alacrity with Defendant to establish a repeatable and reliable procedure whereby legal mail from this Court is only opened in the presence of Plaintiff;

2. Defendant will deliver to Court and Plaintiff an exact and precise written protocol of the requirements for inbound mail to be handled as legal mail.   Mere allusion to vague Inmate Manual text wording will be an unacceptable fulfillment of this Order.  Unspecified allusion to local practice is also unacceptable. Said protocol will be signed with the name and title printed of responsible Defendant staff;

3. When inbound legal mail is opened in Plaintiff's presence, Plaintiff will assist the Court in ascertaining that his legal mail is not read by staff, even if it is cursorily screened for contraband;

4. All outbound legal mail will be promptly entered into the USPS system and otherwise sent on its way to the addressee without hinder, delay or let;

5. All improper use of USPS labels is forbidden, especially local zip code labels masquerading as addressee zip code labels;

6. Purposeful delay of outbound legal mail and or subsequent opening in absence of Plaintiff is forbidden;

7. To effect No. 6, supra, Plaintiff will assist Court by logging every outbound piece of mail and do his best to verify its receipt or lack of it by addressee, and convey this information to the Court as appropriate;

8. Defendant will desist from rejecting inbound mail without documentation to both sender and Plaintiff;

9. This Order shall run twelve (12) months after which compliance will be evaluated by the Court with a view to continuance or not;

10. Pending the duration of this Order and afterwards Defendant will be barred from retribution for filing this Petition with the Court.   These possible retributive acts shall include but not be limited to:

    A. Shots written for no substantial cause;
    B. SHU incarceration for no substantial cause;
    C. Interference of any kind in, or reading of any communications between the Plaintiff and the Court and officers of same.

### SHOW CAUSE ORDER

Defendant FCI Beckley staff shall respond to the Court within thirty (30) days giving any and all reasons why the TRO attached, No. 1 - 10 shall not issue.

TRULINCS 11761055 - KOPP, JAMES CHARLES - Unit: BEC-O-D

---------------------------------------------------------------------------------------

FROM: 11761055
TO:
SUBJECT: DV cos
DATE: 03/22/2019 10:16:55 AM

DV

.
.
.
.
.
.
.
.
.
.

Certificate of Service

I the undersigned did at the below institution on the below date put into the  mail system with proper postage affixed  a true
copy of:

REQ. ORD. SHOW CAUSE / JCK →
RE T.R.O. APP.    USDC - SDWV
Beckley

in an envelope addressed to opposing counsel at:

.    USA - SDWV - Beckley Division
.    c/o 300 Virginia St. East
.    # 4000
.    Charleston, WV  25301

I declare and affirm pursuant to USC 18 Section 1746 and under the penalties and pains of the laws of perjury of the State of
West Virginia and the US Code that the foregoing is  true and correct.

James C. Kopp  11761-055

FCI Beckley                                                      Executed at Beaver:
Box 350
Beaver WV  25813                                          7  June  2019

List of Exhibits

Section I :  Exhibits of Primary Concern
These Exhibits corroborate claim of  Forgery of USPS labels

Reverse Chronological Order

A.   Xerox, face of second recent letter to "Rosie Carleton" in Massachusetts, returned to Plaintiff by FCI staff bearing 13 Feb. 2019 Charleston WV postmark.

B.   Xerox, entry, 2005 zip code directory entry on Carleton's address.

C.   Xerox, face, first letter to "Rosie Carleton" in Massachusetts returned to Plaintiff by FCI staff bearing  a 20 Sept 2018 Beaver, WV postmark.

D.   Xerox, face, legal mail to counsel Barket returned by FCI staff bearing a "return to sender" label dated 28 Jul 2017.

E.   Xerox, face, legal  mail to counsel Barket  returned by FCI staff bearing a 27 Feb 2018 postmark/cancellation and a "return to sender" label dated 3 Mar 2018.

Section II : Exhibits of Secondary Concern
These exhibits corroborate claim of mail from Federal Judges consistently delayed
and opened in Plaintiff's absence.

Reverse chronological order

F.   Xerox, face, letter from 2d USCA,  Foley Square  to Plaintiff postmarked 15 Dec 2016.

G.   Xerox, face, letter from 2d USCA,  Foley Square to Plaintiff  postmarked 14 Jun 2017.

H.   Xerox, face, letter from 2d USCA , Foley Square  to Plaintiff postmarked   11 July 2017.

I.   Xerox, face, letter from USDC - SDWV,  Beckley Division  to Plaintiff postmarked   8 Aug 2018.

J.   Xerox, face, letter from USDC - SDWV, Beckley Division  to Plaintiff post marked 15 Aug 2018.

K.   Xerox, face, letter from R. Perry, Clerk, USDC - SDWV, Beckley Division to Plaintiff postmarked 11 Sep 2018.

L.   Xerox, face, letter from Clerk, USDC - SDWV, Beckley Division to Plaintiff  postmarked  12 Oct 2018.

Section III : Recent Relevant Correspondence with Court

Reverse chronological order

M.   Xerox, letter from Plaintiff to USDC - SDWV dated 2 April 2019.

N.   Xerox, topsheet, Proposed Findings and Recommendation of USMJ O. J. Aboulhosn dated 11 Sept 2018.  Docket 5:18 cv - 001212 (now stricken).

11

O.   Copy, letter of JCK to  USDC - SDWV - Beckley Division dated 21 March 2019.

P.   Copy, Affidavit of JCK dated  18 Mar 2019.

.Q.   Copy, "Affidavit  II" of JCK dated 20 Mar 2019.

R.   Omnibus Affidavit of JCK dated 16 May 2019.

S.   Copy, Certified Mail tracking registration number of letter of  JCK to  counsel Broderick sent 6 Mar 2019.

T.   "A Combination of Speculation and Facts To Explain How Defendant Can Read Plaintiff's Outbound Legal  Mail".

U.   List,  letters sent and never responded to.

V.   FCI Beckley Inmate Handbook.  Excerpt:  Mail Rules

W.   USPS Appalachian District Form Letter Response

X.   Copy, letter from Plaintiff to DOJ - OIG - WDC dated 20  April 2018

Y.   Copy, COS to A.P. Dunbar, BOP Mid-Atlantic Regional Director

Section I: Exhibits of Primary Concern

These exhibits Corroborate claim of Forgery of USPS Labels

Exhibits   A  -  F



EXHIBIT   A



Exhibit   B



U.S. POSTAGE PAID
FCMLG ENV
DENVER, CO
2583
SEP 20 18
AMOUNT
$0.00
R2304M115237-05

02474

1000

Paid
(Out
Mail Cost
Unit)

NIXIE     015  7E 1     7209/27/18
RETURN TO SENDER
ATTEMPTED - NOT KNOWN
UNABLE TO FORWARD
BC: 25813035050     215SN270181-02617

Ralph        OKU

<> 11761-055 <>
Rosie Carleton
139 Medford ST
Arlington, MA 02474
United States

ANK

EXHIBIT  C

# 2005 National Five

# ZIP Code & Post Office Director

## Official Edition



Volume One

Alabama - Michigan

An exact download from USPS database by nonexclusive licensee
CLAITOR'S PUBLISHING DIVISION
Established 1922/Largest Private GPO Distributor
PO Box 261333
Baton Rouge, LA 70826-1333
ph: 800-274-1403/email claitors@claitors.com
www.claitors.com

EXHIBIT D

CHARLESTON WV
13 FEB 2019

personal, just finishing up apples

Ralph

<11761-055<>
Rosie Carleton
139 Medford ST
Arlington,
United Sta      N I X I E      815    DE 1      0002/24/19

RETURN TO SENDER
NO SUCH STREET
UNABLE TO FORWARD

BC: 25813035058      *1871-05813-13-42

James Kopp
11761-055
Federal Correctional Institute-Beckley
P.O. Box 350
Beaver, WV 25813-0350
United States

EXHIBIT   E



UNITED STATES COURT OF APPEALS
UNITED STATES COURTHOUSE
FOLEY SQUARE
NEW YORK, NY 10007

OFFICIAL BUSINESS

Recieved
27 Dec 16

EXHIBIT F

Section II :        Exhibits of Secondary Concern

These Exhibits Corroborate Claim of Mail From Federal Judges

Consistently Delayed and Opened in Plaintiff's Absence

EXHIBITS   G  –  L



CLERK'S OFFICE
UNITED STATES COURT OF APPEALS
UNITED STATES COURTHOUSE
FOLEY SQUARE
NEW YORK, NY 10007

OFFICIAL BUSINESS

EXHIBIT G



CLERK'S OFFICE
UNITED STATES COURT OF APPEALS
UNITED STATES COURTHOUSE
FOLEY SQUARE
NEW YORK, N.Y. 10007

EXHIBIT



EXHIBIT I



EXHIBIT  J

CHARLESTON WV 250

11 SEP 2019 PM 2 1

B. Perry Clerk
USDC - SDWV
Beckley Div
110 . (N). Heber . St
Beckley WV 25901

11761-055
James Kopp
11761-055
Federal Correctional Institue-Beckley
P.O. Box 350
Beaver, WV 25813-0350
United States

25813-035050

EXHIBIT K



USPOSTAGE
neopost
09/12/2018
$00.47⁰
FIRST-CLASS MAIL
ZIP 25801
041L10236337

CHARLESTON
WV 250
12 SEP '18
PM 2 L

CLERK, UNITED STATES DISTRICT COURT
ROBERT C. BYRD U.S. COURTHOUSE
110 N. Heber Street, RM. 119
BECKLEY, WV 25801

OFFICIAL BUSINESS

James C. Kopp
#11761-065
FCI BECKLEY
P. O. Box 350
Beaver WV 25813

25813-035050

EXHIBIT  L

Other Exhibits

Exhibits M - Y

TRULINCS  11761055 - KOPP, JAMES CHARLES - Unit: BEC-O-D
--------------------------------------------------------------------------------

FROM: 11761055
TO:
SUBJECT: DV Jetzt
DATE: 03/31/2019 07:43:18 PM

DV

.
.
.
.

.

USDC - SDWV - Beckley Division
c/o  R. Ruddy
110 N. Heber St., Room 119
Beckley WV  25801

2 April 2019

I hope you are well today.  =)

I wanted to let you know that on advice of counsel I rejected mail that appeared to come from you on 29 III 2019, here.
    Description:  9 x 12 'manila' envelope with  my name visible in the glassine window.  Clearly marked as from USDC - SDWV,
Beckley.  Postmarked: 26 III 2019.  Envelope opened and stapled shut again.
    Grounds:  counsel advised  me to reject any legal matter opened in my absence.
    Staff here bruited to me reasons for their conduct but I do not see it in my standing to attempt to characterize such to you.
    Suggestion going forward:  Again, it is not my place to say so, but it occurred to me that a modicum of involvement of
opposing counsel could fix this quickly.  But that's just a thought.
    I look forward to resolution of this matter so that I can get up to speed with you in a manner that includes preservation of my
VI AM inter alia rights in re a secure channel with yourself that avoids the usual security problems I have had on this yard and
with which I hope you are still familiar, calling to mind last Summer's filings.  Meaning: unnecessary broadcast of details before I
or counsel or even yourself has had a chance to become familiarized.

    Finally, I give notice hereby:

.    A.  I am very interested in prosecuting the instant matter despite this problem;
.    B.  DV I will  send soon a replete TRO Application, which I believe is timely regardless of the ultimate proper instrument .
for the instant matter;
.    C.  I look forward to apropos correction by the Court in this and any matter.
    D.  Please extend any I legal lines
    Remaining, Most Sincerely,

Jim Kopp 11761-055  Box 350 Beaver WV  25813

EXHIBIT  M

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

### BECKLEY DIVISION

JAMES C. KOPP,                                    )
                                                  )
    Plaintiff,                    )
                                                  )
v.                                                )        Civil Action No. 5:18-001212
                                                  )
FCI BECKLEY,                                       )
                                                  )
    Defendant.                    )

### PROPOSED FINDINGS AND RECOMMENDATION

Pending before the Court is Plaintiff's letter-form Motion to Voluntarily Dismiss Without Prejudice (Document No. 8), filed on September 10, 2018. By Standing Order, this matter was referred to the undersigned United States Magistrate Judge for submission of proposed findings of fact and a recommendation for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). (Document No. 2.)

### FACTUAL AND PROCEDURAL HISTORY

On August 6, 2018, Plaintiff, acting *pro se* and incarcerated at FCI Beckley, filed his letter-form Complaint in this matter claiming entitlement to relief pursuant to Bivens v. Six Unknown Federal Agents of Federal Bureau of Narcotics, 403 U.S. 388, 91 S.Ct. 1999, 24 L.Ed.2d 619 (1971). (Document No. 1.) In his letter-form Complaint, Plaintiff states that prison staff are improperly interfering with his legal mail, denying him visitation with an "approved visitor," and denying him contact with his attorney. (Id.)

By Order entered on August 8, 2018, the undersigned directed Plaintiff to complete a form Complaint naming individual defendants and stating specific facts as to how each defendant violated his constitutional rights if Plaintiff wished to proceed with his Bivens claim. (Document

EXHIBIT   N

DV

USDC  SDWV  - Beckley Division
c/o  Mr. Ruddy
Beckley, WV

IN RE: Inmate Mail Problems Again
James C. Kopp

21 March 2019

Dear Your Honor,

As you can see by the enclosed Affidavit I am having problems with my mail again.  Mindful of our history last Summer (an attempted +++Bivens+++) you may recall that mail obstruction was one of the  grievances at that time.  Jurisdiction for today would be:  Ist, Vth, VIth and XIVth Amendments, inter alia.

Today's incident is part of a systematic and ongoing problem with  mail here for me, included but not limited to:

    (a)  In four-and-a-half years here I have never received a piece of inbound legal mail opened in  my presence.  It is always opened in my absence.   This includes +++your mail to me+++;
    (b)  In the same time frame I have never received a piece of legal inbound mail from the Unit secretary; always some other staff person, whom admit frankly it is not their usual duty;
    (c)  Forged RTS labels and shredding of uncancelled postage stamps affixed by me to letters refused to be sent.  In addition to the instant refusal to send mail.  Disappearance of letters to clergy, infra.

    ++++++++++++++      PRAYER:   As a result of al this I would be so grateful if you would be so kind as to please forward the enclosed letters to counsel, USPS OIG/PMG and clergy.  ++++++++++++++++

I am embarrassed to ask you to spend bench resources for such a quotidian task.  If you have a more efficient way to restore my rights, I'd be so grateful if you would let me know.   Be assured I will pursue that with alacrity.
    I hereby waive confidentiality on the content of the  enclosed letters as far as you are concerned.

    Anticipating a possible non-response from the USPS WDC I wonder if  you would be so kind as to send a cc: of this letter to your USDC Pro Se Counsel for advice as to the correct +++procedural +++ legal instrument and jurisdiction, absent advice as to +++substance+++ or merits of same;

    (a)   +++Bivens+++ vs a fed. mandamus or request for Court Order.   The +++Bivens+++ is more likely to provoke retaliation since it is money-based and fairly +++ad hominem in se+++.   I am more interested in proper conduct than in money damages, if the former can be obtained, neat.  But I also don't waive damages at this time.

    (b) In either action, a TRO application will be timely and would not be premature, even before the USPS answers or no. Why?  To date, the  instant tort itself is in place.  Also, iterative back and forth to you is tedious for us both, I would  imagine, and a mis-use of public  resources.

Also reminding you humbly of a sensitive matter raised before, impossible to prosecute absent a secure path to counsel,

Most Sincerely,

Jim Kopp 11761-055 / FCI Beckley /  Box 350 / Beaver WV 25813

cc:  Esqq. John Broderick, Bruce Barket and Toni Angeli, all three NY; John Whitaker, FL; J.B. Sessions III, AL;  H.E.'s Cordileone and Chaput, SF and Philly; USPS OIG / PMG, WDC; all c/o USDC - SDWV Beckley Division.

encl: letters to above;  Aff. of Kopp.


Exhibit  O

DV

### Affidavit of James C. Kopp
### 11761-055

1.    I am an inmate at the below institution;

    On 6 March 2019 the below institution was on "lockdown" status.

2.    At or about 2000 hours on 6 March 2019 at the below institution I placed  in front of my door a letter addressed to counsel J. Broderick, Esq., Long Island, NY.    The mail was clearly addressed with an institution label, with a clearly labeled return address, proper postage affixed, and with a Certified Mail sticker filled in and affixed.  It was also clearly labeled "Legal"  mail;

3.    John Doe No. 1, a  staff  person well known to myself who was working that shift, did pick up the mail;

4.    The lockdown went off on 11 March, this year;

5.    On 13 March this year at or about 10:47 AM I discovered  John Doe No. 2 on duty in the mail room.  Upon enquiry about the certified  letter and after reviewing his own records  he told me he had not sent it out.   Upon follow-up query as to the possible whereabouts of this letter, he directed me to Operations, specifically mentioning John Doe No. 3, a person who works closely with Operations;

6.    At or about 10:53 AM of that same day I noticed  John Doe No. 3 standing  mainline  on the Chapel side door en  milieu bystanders;

7.    Upon query about the letter John Doe No. 3 asked if the letter had "lots of stamps" and was "legal" mail .  I said yes, and he said  he  definitely had the letter in his possession;

8.    After further discussion he assured me perfectly unequivocally that I would receive the Certified Mail receipt the next day, which would be 14 March 2019.  He said: "You'll get it tomorrow";

9.    This is the last I heard from John Doe No. 3 nor anyone else about this letter; no receipt, either.

10.  I am familiar with and can positively identify all of the Does in this Affidavit.  I will reveal their identities at the timing and discretion of the Court.  I withhold their exact identities at this time for reasons probably familiar to the Court.

I affirm and declare pursuant to USC 18 section 1746 and under the penalties and pains of the laws of perjury of the State of West Virginia and the US Code that the foregoing is true and correct.

James C. Kopp   11761-055

FCI Beckley                                          Executed at Beaver:
Box 350
Beaver WV  25813                                18 March 2019

Exhibit  P

TRULINCS  11761055 - KOPP, JAMES CHARLES - Unit: BEC-O-D

---------------------------------------------------------------------------------

FROM: 11761055
TO:
SUBJECT: DV side. let.x
DATE: 03/19/2019 08:49:17 AM

DV

Affidavit II of James C. Kopp
11761-055

1.    This Affidavit is in support of the Affidavit by me dated 18 March 2019;

2.    It affirms every fact in the above Affidavit;

3.    It adds a few facts to the above affidavit which will be revealed to the Court at an appropriate time;

4.    The facts in the instant Affidavit are possibly sensitive;

5.    IN RE Point No. 5 of the affidavit of 18 March 2019, in addition to the facts stated therein, I also add in this affidavit that I asked John Doe No. 2 why he thought my mail was being held up by Operations.  He replied: "Because you're special, Kopp";

6.    Upon follow-up query as to why I was "special" he added no information, merely repeating the assertion.  We then went on to other topics detailed in the previous affidavit;

7.    IN RE Point No. 6 of the affidavit of 18 March 2019 I now add the following: one of the bystanders next to John Doe No. 3 was Jane Doe No. 1, a staff person well known to me.  She was standing immediately next to John Doe No. 3 in such a way that all the words of the conversation between myself and John Doe No. 3 were heard and understood by her, as indicated by the expression on her face as she followed the conversation closely.

I declare and affirm pursuant to USC 18 Section 1846 and  under the penalties and pains of the laws of perjury of the State of West Virginia and the US Code that the foregoing is true and correct.

James C. Kopp  11761-055

FCI Beckley                                                    Executed at Beaver;
Box 350
Beaver WV  25813                                              20 March 2019

Exhibit  Q

Omnibus Affidavit

Rejection of Tampered Mail From USDC - SDWV - Beckley Division

On The Unit

1.    On 28 Mar 2019 I was given an envelope by John Doe No. 6 printed for return address clearly as being from USDC - SDWV - Beckley Division in Beckley, West Virginia;

2.    The 9 x 12 manila envelope with my name and address visible in the glassine window was postmarked "3/26/2019."

At The Mailroom

3.    After discussion with Unit Staff I returned the envelope to the mail room staff at or about 12:33 PM on or about 31 April 2019.   John Doe No's. 1 and 4 were on duty there.  When I gave the envelope to John Doe No. 4 and told him it was rejected he opened the envelope again (it was secured with a single staple after it had been opened the first time).  He pulled out the contents of the envelope, examined them  and asked me questions about the contents;

4.    I told him that on instructions of counsel I was not permitted to discuss with him any such questions, based as they were on the intellectual contents of the envelope;

5.    He asked would I sign something to the effect that I was rejecting the envelope.  I said "Of course."

Offices of R and D

6.    On 4 April 2019 at or about 2:45 PM I was summoned to Reception and Discharge (R and D).  Upon arriving there I encountered John Does No.'s 5 and 7 waiting for me;

7.    John Doe No. 5 informed me that he was in charge of all mail for the institution.  He then produced an envelope that appeared to be the one described supra, point No. 1;

8.    John Doe No. 5 then opened the envelope again and pulled the contents out.  His first question to me was spoken as he was doing this and indicated his prior familiarity with the intellectual contents of the envelope.  He then proceeded to ask me several questions based on the intellectual contents of the envelope;

9.    I informed John Doe No. 5 that upon instruction of counsel I was not permitted to answer any questions based on his reading or analysis of anything inside the envelope, and that I had rejected same due to the fact that it had been already opened in my absence before it was first given to me on the unit;

10.   Once this parameter was established a frank and amiable discussion ensued on related topics.  Inter alia I mentioned the gravamen of my current litigation, viz: that my outgoing legal mail had been and was still being obstructed.  He seemed genuinely surprised to hear this  information;

11.   I mentioned my concern about unknown staff opening and reading my legal mail in my absence and the possible consequences of same.  He indicated to me that in light of my concern he would keep the rejected piece of mail "on [his] desk." The conversation ended amiably.

Letter to USDC - SDWV  Explaining Rejection of Tampered Mail

12.   On 1 April 2019 I sent the letter copied in Exhibit N to USPS SDWV.  I gave it to John Does No's 2 and 4 in the  mail room at 0742 AM on that date.

EXHIBIT  R.1

Other Issues:

Veracity of Exhibits Herein

13.   I hereby affirm that all of the letters to or from counsel and/or federal courts was received by me as I indicate elsewhere in this filing and that the pieces indicated had the labels and marks and torn off postage stamps and or cancellation marks as I have indicated.

Hearsay, Dunkle and Rodgers

14.   Hearsay:  I affirm that Dr. John Dunkle and Anne Rodgers did tell me that they have had most of their mail sent to me rejected in the last six or more months.  Further, that in most or all cases no documentation was provided to me or them as to cause for rejection.

Flat Rate Envelopes

15.   In or about 2015 or 2016 I did encounter Jane Doe No. 2 at mainline;

16.   I asked her about why we do not have a Flat Rate Envelope USPS service available here at FCI Beckley when it is available at other yards;

17.   She responded by saying that the Flat Rate Envelope is no longer available with the USPS on the street, or is being phased out as we spoke, along with all paper mail, since all mail is in the process of being replaced by e-mail.

Letters Sent Out By Plaintiff

18.   I hereby affirm that the letters I asserted to have written in Exhibit O and elsewhere were actually written and mailed by me to the Addressees mentioned in the Exhibit, and that I affixed proper postage to all of the envelopes and did give them to mail staff here at FCI Beckley.

Destruction of Uncancelled Stamps

19.   In or about 2016 or 2017 I was summoned to Unit Tunnel.  Therein I encountered John Doe No. 7,  known to me.  He asked me to sign a ledger to the effect that I had received legal mail, and I did, pro forma;

20.   He then proceeded to open a 9 x 12 manila envelope which had been already opened and then closed again with a few staples.  I recognized this piece of mail as being a legal mail I had sent out approximately two or three months previously;

21.   During every part of this entire process, John Doe No. 7 was very careful to not allow the face of the envelope to be seen. He carefully sequestered same on the far side of his desk, face down, on the desk, at all times, even  when he  removed the contents of the envelope;

22.   He inspected the contents of the envelope for contraband, at one point showing the contents to Jane Doe No. 3, a staff member known to me, who was nearby;

23.   Satisfied there was no contraband in the envelope, he gave the contents to me;

EXHIBIT  R.2

24.   I asked to see the envelope which was face down but he refused.  "I am going to shred that," he said;

25.   The record of, and exact date of this inspection and faux delivery is in the ledger that I signed.

Corroborative Evidence of Further Illicit Outbound Legal Mail Snooping

26.   Two days or so after I mailed the 2 April 2019 letter to USDC - SDWV - Beckley Division, Jane Doe No. 3 asked me: "Are  You OK?" when she saw  me;

27.   Historically she asked me this question only in response to last summer's filings wherein I had mentioned to this court the possibilities of security problems and continued staff retribution;

28.   This question from her, especially at that time, shortly after 2 April 2019  only  made sense in light of her having received information based on the intellectual content of my outbound legal mail to this Court only a few days earlier.   This was likely before this Court had even gotten the mail in the first place, if in fact it did at all;

29   According to hearsay of one inmate, he directly observed  Unit staff one day opening and reading an entire stack of outbound legal mail from various inmates.    All of the letters had  Certified Mail bar codes on them.


I declare and affirm pursuant to 18 USC Section 1746 and under the penalties and pains of the laws of perjury of the State of West Virginia and the US Code that the foregoing is true and correct according to my knowledge and belief.

James C. Kopp   11761-055

FCI Beckley                                                                      Executed at Beaver
Box 350
Beaver, WV  25813                                                          16 May 2019


EXHIBIT   R.3



EXHIBIT   S

A Combination of Speculation and Facts About
How to Read Plaintiff's Outgoing Legal Mail

1. Defendant FCI Beckley staff accepts Plaintiff's mail under pretence of conveying same to be entered into the regular USPS system, but does not;

2. Delay handling of mail until Defendant feels Plaintiff may have forgotten about sending it. About two months;

+++ Here Is The Critical Step +++

3. Deem mail to be "Attempted To Deliver[ed]" or some such idea; a total fraud;

4. Mail now becomes "Incoming" mail and subject to as such to screening, as if it truly were incoming mail;

5. Open mail in absence of Plaintiff;

6. In order to perpetrate the fraud of attempted delivery and/or having entered mail into the off-prison USPS system, Defendant forges/misuses USPS labels intended to indicate true inability of Addressee USPS office to deliver mail ;

7. These fraudulent stickers are generated on equipment never located outside the area code of Defendant FCI Beckley or it's local sphere of influence, such as a warehouse location;

8. "Deliver" the once-outbound mail, opened already, back to Plaintiff Kopp without it ever having entered the USPS system proper;

9. The same above protocol works also for mail which Plaintiff effectively refuses to enter into the USPS system proper, or deliver, but conceals and obfuscates same refusal.

EXHIBIT T

Exhibit  U

Partial List of Letters Sent

But Plaintiff Never Received A Response

1.  Fr. Rebenecker, BOP WDC

2.  Hon. Sean Duffy, WDC

3.  National Conference  of Catholic Bishops, WDC

4.  Fr. Robert Royal, NYC

5.  Fr. Thomas Carleton, MA

6.  Hon. Anne Burke, IL State SC

7.  Rollins, Casey, et al. Esqq.   Charleston, WV

8.  A.P. Dunbar, Director, BOP  Mid-Atlantic Region

9.  OIG DOJ, WDC

10.  H.E. Wm Lori,  Baltimore Archdiocese

11.  Diocese of Wheeling - Charleston, Charleston, WV

12.  Elizabeth Yore, Esq.  Chicago

13.  J. Broderick, Esq.  NY

NB:  Most of the above were sent as legal mail and logged as such in R & D

Exhibit  U

Page 1

# INMATE
# ADMISSION & ORIENTATION
# HANDBOOK



## Federal Correctional Institution
## Federal Prison Camp
## Beckley, WV

UPDATED: AUGUST 2018

EXHIBIT V. 1

Inmates will be classified based on the last two numbers of their first five digits. Example inmate # 12345-678 would be for PA3.

| | With Current Staff at Mid-Level Providers | |
|---|---|---|
| PA 1 | 00-19 | Approx. 400 Inmates |
| PA 2 | 20-39 | Approx. 400 Inmates |
| PA 3 | 40-59 | Approx. 400 Inmates |
| PA 4 | 60-79 | Approx. 400 Inmates |
| PA 5 | 80-99 | Approx. 400 Inmates |

## CONTACT WITH THE COMMUNITY AND PUBLIC

**Correspondence**
In most cases, inmates are permitted to correspond with the public, family members and others without prior approval. Outgoing mail is placed in mailboxes located in the housing units. Ongoing mail will be inspected by staff, and must be unsealed when deposited in the institution mailbox. The ongoing envelopes must have the inmate's name, registration number, and complete return address in the upper left hand corner. Do not abbreviate Federal Correctional Institution Beckley.

Inmates will be responsible for the contents of all of their letters. Correspondence containing threats, extortion, etc., may result in prosecution for violation of Federal laws.

Inmates may be placed on restricted correspondence status based on misconduct or as a result of classification. The inmate is notified of this placement and has the opportunity to respond. There is no mail service on weekends and holidays.

**Incoming Correspondence**
First class mail is distributed Monday through Friday (except holidays) by the evening watch Correctional Officer in each living unit. Legal and Special Mail will be distributed by Mail Room or Unit staff and opened in the presence of the inmate. Inmates are asked to advise those wishing to write to them to put the inmate's registration number and Housing Unit on the envelope to aid the prompt delivery of mail. All inmate packages received at the institution must have prior authorization. Ordinarily, authorization for inmates to receive incoming packages will be limited to release clothing.

**Incoming Publications**
The Bureau permits inmates to subscribe to and receive publications without prior approval. The term publication means a book, single issue of a magazine or newspaper, or material addressed to a specific inmate, such as advertising brochures, flyers, and catalogs. An inmate may only receive

---

If you are considered indigent, you will not have the copay fee deducted from your Inmate Commissary Account. Please note that NO inmate will be denied medical treatment based on financial status.

If you are NOT indigent, but you do not have sufficient funds to make the copay fee on the date of the appointment, a debt will be established by TRUFACS, and the amount will be deducted as funds are deposited into your Inmate Commissary Account.

E. **Complaints:** You may seek review of issues related to Health service fees through the Bureau's Administrative Remedy Program (see 28 CFR, Part 542).

## OVER-THE-COUNTER MEDICATIONS (OTC'S)

Personal resources will be used by inmates to obtain OTC medications which are indicated for cosmetic and general hygiene issues or symptoms of minor ailments. These symptoms include seasonal allergies, occasional constipation, uncomplicated athletes foot, acne, simple rashes, dry skin, and muscle aches from exertion.

For those inmates who report to health services with symptoms of minor medical ailments or cosmetic or general hygiene issues they will be referred to the institution Commissary with a Commissary Shopping List stating which medications they may purchase for general complaints.

**On-the-job Injuries**
If an inmate is injured while performing an assigned duty, he must immediately report this injury to his work supervisor. The work supervisor will then report the injury to Health Services staff and the institution Safety Manager. The inmate may be disqualified from eligibility for lost-time wages or compensation if he fails to report a work injury promptly to the supervisor. If injured while performing an assigned duty and the inmate expects to be impaired to some degree, he may submit a claim for compensation. A medical evaluation must be included in the claim before any compensation can be considered.

## PRIMARY CARE PROVIDER TEAMS

The goal of this institution's Health Services Department is to provide medical care which is consistent with the community standard of care. The PCPT model is designed to function in the same manner as a doctor's office within the community setting, consisting of clinical staff such as Physicians, Physician's Assistants, Registered Nurses, and Medical Assistants, as well as support staff such as Medical Records Technicians, and clerical staff.

The PCPT Team is a group of health care providers and support staff whose function is to provide direct patient care which support and enhance the day to day operations of the Sick-call process, and chronic care clinics.

EXHIBIT V.2

publications and newspapers from the publisher or a book club/store.

## Special Mail

Special Mail is a category of correspondence which may be sent out or received in the institution unopened and unread by staff, which includes correspondence to: President and Vice-President of the United States, U.S. Department of Justice (including Bureau of Prisons), U.S. Attorney's Offices, Surgeon General, U.S. Public Health Service, Secretary of the Army, Navy, or Air Force, U.S. Courts, U.S. Probation Officers, Members of the U.S. Congress, Embassies and Consulates, Governors, State Attorneys General, Prosecuting Attorneys, Directors of State Department of Corrections, State Parole Commissioners, State Legislators, State Courts, State Probation Officers, other Federal and State law enforcement officers, attorneys, and representatives of the news media.

For incoming correspondence to be processed under the Special Mail procedures, the sender must be adequately identified on the envelope, and the front of the envelope must be marked Special Mail - Open only in the presence of the inmate.

A designated staff member opens incoming Special Mail in the presence of the inmate. These items will be checked for physical contraband and for qualification as Special Mail; the correspondence will not be read or copied if the sender has accurately identified himself/herself on the envelope and the front of the envelope clearly indicates that the correspondence is Special Mail only to be opened in the presence of the inmate. Without adequate identification as Special Mail, the staff may treat the mail as general correspondence. In this case, the mail may be opened, read, and inspected.

## Inmate Correspondence with Representatives of the News Media

An inmate may write, following Special Mail procedures, to representatives of the news media when specified by name and title. The inmate may not receive compensation or anything of value for correspondence with the news media. The inmate may not act as a reporter, publish under a byline, or conduct a business or profession while in Bureau custody.

Representatives of the news media may initiate correspondence with an inmate. Correspondence from a representative of the news media will be opened, inspected for contraband, for qualification as media correspondence, and for content which is likely to promote either illegal activity or conduct contrary to regulations.

## Correspondence between Confined Inmates

An inmate may be permitted to correspond with an inmate confined in another penal or correctional institution. This is permitted if the other inmate is either a member of the immediate family (mother, father, sister, child, or spouse), or party in a legal action (or a witness) in which both parties are involved. The Warden at both institutions must approve the correspondence.

Exhibit V.3

## Rejection of Correspondence

The Warden may reject general correspondence sent by or to an inmate if it is determined to be detrimental to the security, good order, or discipline of the institution, to the protection of the public, or if it might facilitate criminal activity.

## Notification of Rejection

The Warden will give written notice to the sender concerning the rejection of mail and the reasons for rejection. The sender of the rejected correspondence may appeal the rejection. The inmate may also be notified of the rejection of correspondence and the reasons for it. The inmate also has the right to appeal the rejection. The Warden shall refer the appeal to a designated officer other than the one who originally disapproved the correspondence. Rejected correspondence ordinarily will be returned to the sender.

## Change of Address/Forwarding of Mail

Inmates may obtain change of address cards from the institution mail room. These cards should be completed by inmates who are being released or transferred, to notify correspondents of a change in an address. Any general mail received after 30 days will be returned to the sender. Special Mail will continue to be forwarded after 30 days.

## Certified/Registered Mail

Inmates desiring to use certified, registered, or insured mail may do so at this facility. An inmate may not be provided services such as express mail, private carrier services, COD, or stamp collecting while confined. Scales and certified materials are available in the law library.

## Telephones

The Inmate Telephone System is a privilege granted to each inmate. Violations of Institution Telephone Regulations may result in the loss of this privilege and disciplinary action.

You will receive a personal Phone Access Code (PAC) this number is confidential and it is a violation of the Telephone Regulations to share this with other inmates. It is your responsibility to safeguard your PAC#. Should you lose it, forget it, or if your PAC# is compromised, you will be charged a $5.00 fee prior to receiving a new one. The ITS allows inmates to purchase telephone time based upon their personal financial resources. Transfer of funds will be accomplished in whole dollar amounts. After an ITS credit has been established, it can only be used for placing telephone calls. ITS credits will not be transferred back to the inmate's commissary account. All rates are established at the national level. When an inmate wishes to place a call, the ITS will compare the telephone account balance to the cost of calling that number, ensuring there are sufficient credits for a minimum three-minute call. If the minimum

amount is not available for the type of call being attempted, the ITS will not allow the call to be completed and the inmate will have to replenish his telephone credit balance. Third party billing and electronic transfer of a call to a third party is prohibited.

All telephone calls will be limited to 15 minutes. At the end of 14 minutes, a tone will warn the caller that there is only one minute remaining in the call. At 15 minutes, the call will automatically be disconnected. This time frame will provide all eligible inmates an opportunity to use the telephone. There is a 45 minute waiting period between calls. Inmates are restricted to 300 minutes per calendar month. Inmates who exhaust their 300 minutes will be restricted from placing telephone calls for the remainder of the month. FCI Beckley has Collect calling capabilities for all domestic calls. International phone calls are prohibited through the collect calling system, debit only on these calls. Unless a pre-paid account has been established by the party being called.

You are allowed to maintain a list of up to 30 telephone numbers of the inmates choosing. Inmates may submit telephone numbers for any person they choose, including courts, elected officials and members of the news media. Attorney telephone numbers may be included on an inmate telephone list with the understanding that these calls are subject to monitoring. Arrangements for unmonitored attorney calls must be made with the unit team.

The inmate population is authorized to place debit/collect calls on the inmate telephones located in their assigned housing unit. When placing debit calls the inmate must first dial the area code and then the telephone number. When placing a collect call the inmate must first dial zero (0), the area code and then the telephone number. Generally, inmate telephones will be available seven days a week beginning at 6:00 a.m. through 11:30 p.m.

Each Inmate Housing Unit (Quad) will have five (5) telephones assigned. There will be one telephone that will remain on in each quad beginning at 6:00 AM to 11:00 PM. The remaining telephones will be turned on and off throughout the day. The following is the Inmate Telephone Schedule:

| | |
|---|---|
| 6:00 am – 7:30 am | all phones on |
| 7:30 am – 10:30 am | one phone each quad on |
| 10:30 am – 12:30 pm | all phones on |
| 12:30 pm – 3:30 pm | one phone each quad on |
| 3:30 pm – 5:00 pm | all phones off for count |
| 5:00 pm – 11:00 pm | all phones on |

The inmate telephones are turned off and on by established time frames that have been software installed in the ITS.

Listed below is a toll free number that you can give to persons you are calling collect. This number will allow the person to inquire about billing charges. The Inmate Telephone system

does not control the rates for the collect calling system.
1-800-913-6096

## ACCESS TO LEGAL SERVICES

### Legal Correspondence

Legal correspondence from attorneys will be treated as Special Mail if it is properly marked. The envelope must be marked with the attorney's name and an indication that he/she is an attorney and the front of the envelope must be marked ("Special Mail - open only in the presence of the inmate." It is the responsibility of the inmate to advise his attorney about this policy. If legal mail is not properly marked, it will be opened as general correspondence.

### Attorney Visits

Attorneys shall ordinarily make advance appointments for each visit. Attorneys are encouraged to visit during the regular visiting hours. However, visits from an attorney can be arranged at other times based on the circumstances of each case and the availability of staff. Attorney visits will be subject to visual monitoring, but not audio monitoring.

### Legal Material

During attorney visits, a reasonable amount of legal materials may be allowed in the visiting area, with prior approval. Legal material may be transferred, but is subject to inspection for contraband. Inmates are expected to handle the transfer of legal materials through the mail as often as possible.

### Attorney Phone Calls

In order to make an unmonitored phone call with an attorney, the inmate must demonstrate to the Unit Team the need, such as an imminent court deadline. Phone calls placed through the regular inmate phones are subject to monitoring.

### Law Library

The Law Library is located in the Education Department, and contains a variety of legal reference materials for use in preparing legal papers. Reference materials include the United States Code Annotated, Federal Reporter, Supreme Court Reporter, Bureau of Prisons Program Statements, Institutional Supplements, Indexes, and other legal materials. The Law Library is open during convenient non-working hours, including weekends. An inmate Law Library Clerk is available for assistance in legal research. Legal materials are also available to inmates in the Special Housing Unit.

### Notary Public

Under the provisions of 18 USC 4004, Case Managers are authorized to notarize documents. A recent change in the law allows the use of a statement to the effect that papers which an inmate signs are true and correct under penalty of perjury will suffice in federal courts and other federal agencies, unless specifically directed to do otherwise. Some states will not accept a government notarization for real estate transactions, automobile sales, etc. In these cases, it will be necessary to contact unit

Exhibit V.4

Inspector General
Department of Justice
950 Pennsylvania Ave., NW  Suite 4706
Washington, D.C. 20530

IN RE: Inmate Kopp
11761-055
In-Custody Issues, BOP

*Mailed*
*24 May*
~~20 Apr~~ 2018

Dear Inspector General,

I hope you are well today =),

As you can see by the enclosed affidavit I am having trouble
with access to counsel by inbound voicepath, mail, and also,
access to approved visitors.  Further, there is a matter
unmentioned herein which is only tractable with improved access
to counsel which I will DV discuss at a future date.

I would be so grateful if you would be so kind as to confirm
and rectify these issues.

Since mail delivery and tampering is part of the problem it
is of great importance to me to know if or not you have received
this letter.  However, due to the peculiar and fierce retributive
environment here (. . . a previous tiny grievance. . . ) I beg
you to please do not contact me directly at all, but only counsel
Barket, infra.  So far I'm still alive but prudence dictates.

Further: the instant communication could appear to violate sub-
sidiarity sensu lato;  Prior to making this conclusion however,
I beg you to please first consider:

I filed a BP 9, etc., last year on a small matter.  The elapse
that ensued delayed delivery to me of oversight body responses,
said delays by local staff.  Said delays jeopardized my capac-
ity to meet deadlines, and thus the entire process in se.

It all took ten months.  Ten months is too long to wait for
a simple phone call or visit; hence, this letter.

Thanking you in advance for your timely assistance to me in
this matter, I remain,

Most Sincerely,

James C. Kopp 11761-055/FCI-Beckley/Box 350/Beaver, WV 25813

encl: affidavit of J. Kopp

cc: Dan Grimm, President Emeritus, Thomas Aquinas College
    Santa Paula, CA

    Bruce Barket Esq.  666 Old Country Rd. Suite 700
    Garden City NY  11530

encl 2: recent unanswered cop-out to upper admin.

EXHIBIT  X

CONSUMER & INDUSTRY CONTACT
APPALACHIAN DISTRICT

 *UNITED STATES*
*POSTAL SERVICE*

September 4, 2018

James Kopp #11761-055
Federal Correctional Institute – Beckley
PO Box 350
Beaver, WV  25813-0350

Dear Mr. Kopp:

This letter is in response to your correspondence to the Postmaster of Beaver, WV regarding mail not yet provided to the Postal Service for processing and your mail delivery.

We understand your concerns about mail service from your facility, but the situation you describe does not come under the authority of the United States Postal Service.

There have been a number of federal court decisions concerning the right of inmates to receive and send correspondence which have established constitutional limits on the authority of prison authorities to censor incoming and outgoing mail. These court decisions have been based upon constitutional grounds, and not on violations of postal laws. If a court issues an order concerning inmates' correspondence privileges, the responsibility to obey the order is placed upon the prison authorities.

Mail addressed to a prisoner is subject to the mail security standards outlined below:

■    ADMINISTRATIVE SUPPORT MANUAL 274.96 – MAIL ADDRESSED TO PRISONERS

> Authorized personnel of prisons, jails, or other correctional institutions, under rules and regulations promulgated by the institution, may open, examine, and censor mail sent from or addressed to an inmate of the institution. An inmate may designate in writing an agent outside the institution to receive his or her mail, either through an authorized address of the agent, if the mail is so addressed, or at the delivery post office serving the institution, if the mail is addressed to the inmate at the institution.

We suggest that you contact authorities at your institution about internal mail regulations or pursue applicable grievance procedures. You may also want to contact a representative of the American Civil Liberties Union (ACLU) about this issue. The address for the ACLU National Prison Project is 733 15th St NW, Suite 620, Washington, DC  20005-6016.

We hope this information has been helpful.

Sincerely,

Consumer & Industry Contact
Appalachian District

419 RUTHERFORD AVE.
ROANOKE, VA  24022-9996
PHONE: (800) 275-8777

EXHIBIT   W

Certificate of Service

I the undersigned did on the below date put into a USPS mailbox a copy of the following document:
at the below institution

letter of JCK to OIG-DOJ-WDC dated 20 Apr 2018
& emailed as mailed 24 May 2018

addressed to:

Angela P. Dunbar   Corr Prg Div
320 1st St (NW)   Rm 554
WDC  20534

I declare and affirm that the foregoing is true and correct pursuant to 28 USC 1746 and under the penalties and pains of perjury of the laws of the State of West Virginia and the United States Code

James C Kopp 11761-055

FCI - Beckley
Box 350
Beaver WV 25813

Executed at Beaver

5 Jul 2018

EXHIBIT  Y

7 June 2019

IN RE:  Order To Show Cause

*CA 5:18 cv 01212*

I hope you are well today! =)

The enclosed explains itself.

Many things bear discussion but I'd be so grateful if you'd be so kind as to permit me to focus this letter on one issue:

+++your mail to me.+++

At the risk of  sounding tiresome please permit me to emphasize:

I am utterly powerless to fix this problem.  I have literally five years experience to prove it.  The enclosed is merely a slice of this.

I would be so grateful if you would be so  kind as to pursue whatever is necessary to establish proper communication between us, which means your mail is not +++opened and read and commented on to me by  mailroom staff in here+++.  (The current practice.)   To the extent that I ++cannot+++ read same, it becomes de facto ex parte communication between you and opposing counsel.  I know this is not your intention.

If you send another letter to me the usual way, it will only delay my access to the courts, +++which issue is not about  mail at all+++

I hate to  bring a problem without at least suggesting a solution.  Thus, humbly proffered, no matter how outrageous sounding:

.    A.   A USMS hand delivers your next communication and then requests to witness it opened and screened for contraband and then given to me in my and his or her presence;

.    B.    Your staff discovers and then complies with whatever local practice Defendant staff employs, for legal  mail.  I am not certain what this legal practice is.  A penumbra of vagueness surrounds this staff's appraisal of your mail.   The inmates Handbook standard (Exhibit  V  )  is a mere starting point on an arbitrary and subjective local practice fantasy journey, not a viable protocol to effect proper communication.

.    C.    Opposing counsel becomes involved with defendant staff, works something out and ensures compliance.

Other Issues we can DV work out anon,

Most Sincerely,

Jim Kopp 11761-055

FCI Beckley
Box 350
Beaver, WV  25813

encl:  Request for Order To Show Cause

